UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DENNIS THACKER,<br><br>Defendant. | ) | Cause No.: 3:08-cv-00885-MJR-PMF |

**FINAL CONSENT INJUNCTION AND JUDGMENT**

**I. Parties & Definitions**

**A.** Plaintiff Monsanto Company is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto is authorized to do and is doing business in Missouri and in this judicial district.

**B.** Plaintiff Monsanto Technology, LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto Technology, LLC is authorized to do and is doing business in Missouri and in this judicial district. Monsanto Company and Monsanto Technology, LLC are hereinafter referred to collectively as "Monsanto."

**C.** Defendant Dennis Thacker is a resident of Lawrence County, Illinois. Defendant is and has been involved in the production of agricultural crops, including soybeans.

**D.** "Person" means any natural individual or any entity, and, without limiting the generality of the foregoing, includes natural persons, associations, joint ventures, limited partnerships, partnerships, corporations, companies, trusts, and public agencies.

**II. Stipulated Findings**

**A.** Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, in that one or more of Monsanto's claims arise under the laws of the United States, as well as 28 U.S.C. § 1338, granting district courts original jurisdiction over any civil action regarding patents. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Monsanto's non-federal question claims, such that they form part of the same case or controversy.

**B.** Venue is proper in this judicial district insomuch as Defendant is domiciled in this judicial district.

**C.** Monsanto is in the business of developing, manufacturing, licensing and selling agricultural biotechnology, agricultural chemicals and other agricultural products. After the investment of substantial time, expense and expertise, Monsanto developed new plant biotechnologies that involve the transfer into crop seed of genes that cause seed to be resistant to glyphosate-based herbicides such as Roundup® branded herbicides (the "Roundup Ready® trait").

**D.** Monsanto's Roundup Ready® trait has been utilized in several agricultural crops, including soybeans, to render them resistant to applications of glyphosate, a herbicide. These genetically modified crop seeds are marketed by Monsanto and other seed companies as "Roundup Ready®" crop seed. Roundup® and Roundup Ready® are registered trademarks of Monsanto Technology, LLC.

**E.** Monsanto's Roundup Ready® biotechnology is protected under patents issued by the United States Patent Office, specifically including U.S. Patent Number 5,352,605 (the "'605 patent") and U.S. Patent Number RE39,247 (the "'247 Patent"). Prior to some or all the events giving rise to this litigation, the '605 and '247 Patents were issued to and/or Monsanto was the exclusive licensee from the owner and was authorized to enforce the rights relating thereto, including seeking injunctive and monetary relief for the infringement thereof. Defendant stipulates and acknowledges that the '605 and '247 patents are valid and enforceable.

**F.** Under the terms of Monsanto's system through which its patented Roundup Ready® biotechnology is licensed, a purchaser is only authorized to use the seed for planting a commercial crop in a single growing season, and is prohibited from saving any of the crop produced from the purchased seed for planting or selling saved seed from the crop produced from the purchased seed, or otherwise supplying or transferring any seed produced from the purchased seed to anyone for planting.

**G.** During at least the 2003-2008 growing seasons, Defendant planted saved, second-generation Roundup Ready® soybean seed on his crop land. Additionally, Defendant applied a glyphoste-based herbicide over-the-top of various soybean fields grown from the saved, second-generation Roundup Ready® soybean seed.

**H.** Defendant agrees, acknowledges and stipulates that he knowingly infringed upon at least 1 claim of Monsanto's '605 patent and at least 1 claim of Monsanto's '247 patent. As such, Defendant acknowledges that his conduct constitutes a violation of 35 U.S.C. § 271(a). Defendant further acknowledges that his infringement was willful.

## III. Permanent Injunction

**A.** It is hereby ordered, adjudged and decreed that Defendant, individually and/or by, through or with any entity, or any agent, servant, employee, and each person in active concert or participation with Defendant, including any of his employees or hired hands that he may retain, who receives actual notice of this Final Consent Injunction and Judgment by personal service or otherwise, is permanently enjoined from:

1. Making, using, or planting any soybean seed containing Monsanto's patented Roundup Ready® biotechnologies unless Defendant executes and complies with the terms and conditions of the Monsanto Technology/ Stewardship Agreement attached hereto as Exhibit A, and any subsequent or modified terms of any limited license which Monsanto offers to users/purchasers of seed containing Monsanto's patented biotechnology; and

2. Offering to sell, selling, or transferring any soybean seed containing Monsanto's patented Roundup Ready® biotechnology to any person for planting, replanting, seed production, crop breeding, research, reverse engineering, generation of herbicide registration data, analysis of genetic composition, or any purpose other than sale as a commodity.

3. Infringing Monsanto's seed trait patents including, but not limited to, U.S. Patent No. 5,352,605 and U.S. Patent Number US RE39,247 E.

## IV. Mandates Through December 31, 2016

**A.** It is hereby ordered, adjudged and decreed that Defendant shall, at the time of his execution of this Final Consent Injunction Judgment, execute the attached Authorizations (attached hereto as Exhibits B-1 and B-2) to allow Monsanto, its counsel, or their respective representatives or agents, to inspect and copy Defendant's Farm Service Agency (formerly known as the Agricultural Stabilization and Conservation Service) farm records and acreage reports, crop production input records, records of the Risk Management Agency, records of the Commodity Credit Corporation and records of sales of soybean seed as a commodity for all years listed therein, inclusive through 2016.

**B.** It is hereby ordered, adjudged and decreed that Defendant shall, upon written request from Monsanto or its representatives,

1. make all of his soybean seed purchase receipts and records, agricultural chemical purchase receipts and records and other agricultural input receipts and records relating to his soybean farming operations, FSA Form 578 (producer print) and individual Farm and Tract Detail Listings, for the crop years 2010 through 2016, inclusive, available to Monsanto for inspection and copying within seventy-two (72) hours of the receipt of written notice;

2. show Monsanto or its representatives the location of all soybeans and cotton planted, harvested, and/or stored by or on behalf of Defendant, during the time period of January 1, 2010 through December 31, 2016, if any;

3. allow and accompany Monsanto or its representatives into:

   **a.** all land planted, farmed and/or controlled by or on behalf of Defendant, including any acreage in which Defendant has any interest in whole or in part, if any, and/or

   **b.** all storage facilities (bins, barns, wagons, bags, warehouses, trailers, etc.) where stored soybean seed is within the care, custody or control of Defendant in whole or in part, if any,

   so that Monsanto or its representative can inspect and determine the number of acres of soybeans planted in the 2010 through 2016 planting seasons, the amount of soybeans and/or cotton stored, and to obtain samples from fields and storage facilities for testing from the 2010 through the 2016 growing seasons.

## V. Monetary Provision

**A.** By consent of the parties, judgment is entered against Defendant and in Monsanto's favor in the total amount of One Hundred Twenty Seven Thousand and 00/100 Dollars ($127,000.00), each party to bear its own costs and attorneys' fees.

**B.** Defendant does not claim, but nevertheless relinquishes any and all rights, benefits, and claims, if any, arising out of any Technology Value Package$^{SM}$, TVP$^{SM}$, or Roundup Rewards$^{SM}$[1] pertaining to purchases, crops, or conduct occurring prior to the execution of this Final Consent Injunction Judgment to the extent any such rights, benefits or claims exist.

## VI. Other Provisions

**A.** Having read and understood the terms and conditions of this Final Consent Injunction and Judgment, the parties agree that the Final Consent Injunction and Judgment constitutes a fair and adequate resolution of all issues and claims involved in this action between Monsanto and Defendant. The parties have by the signatures herein below recommended this Court issue this Final Consent Injunction and Judgment.

[1] Technology Value Package$^{SM}$, TVP$^{SM}$, and Roundup Rewards$^{SM}$ are service marks of Monsanto Technology LLC.

**B.** Jurisdiction is retained for the purpose of enabling any party to this Final Consent Injunction and Judgment to apply to the Court at any time for the enforcement of the provisions herein and/or to remedy a violation of the Final Consent Injunction and Judgment. This Final Consent Injunction and Judgment shall be governed by the laws of the State of Illinois and the United States.

**C.** The failure, or alleged failure, to seek remedies as the result of violation of the Final Consent Injunction and Judgment shall not constitute a waiver of any other violation.

**D.** If any provision or provisions of this Final Consent Injunction and Judgment is or are declared invalid by a court of competent jurisdiction, the remainder of this Final Consent Injunction and Judgment shall remain in full force and effect and shall not be affected by such declaration. If any provision or provisions of this Final Consent Injunction and Judgment is or are declared invalid as being overbroad by a court of competent jurisdiction, the court should modify the provision or provisions so that they are as broad as possible without being so broad as to be invalid.

**E.** The Parties acknowledge that they have read this Final Consent Injunction and Judgment and that they have discussed its terms and conditions with an attorney of their choice. The Parties further declare and represent that in executing this Final Consent Injunction and Judgment, they have relied wholly upon their own judgment, belief and knowledge of the nature, extent, and effect of this Final Consent Injunction Judgment, without reliance upon any statement, promise or representation by any party.

**F.** By his signature below, Defendant waives the right to trial and/or appeal of this matter and agrees to, and acknowledges the terms of, this Final Consent Injunction and Judgment and waives any requirement of the personal service of this Final Consent Injunction and Judgment.

**SO ORDERED:** M J Reagan (as to form)

Dated this 4th day of March, 2010.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By: ______________________

Joseph C. Orlet
Christian Mullgardt
Matthew R. Grant
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 facsimile
joseph.orlet@huschblackwell.com
christian.mullgardt@huschblackwell.com
matt.grant@huschblackwell.com

Attorneys for Plaintiffs Monsanto Company and Monsanto Technology LLC

AND

RONALD E. OSMAN & ASSOCIATES, LTD.

By: ______________________

Ronald E. Osman
Blane Osman
1602 W. Kimmel
P.O. Box 939
Marion, Illinois 62959
Telephone: 618-997-5151
Facsimile: 618-997-4983
rosman@marion.quitamlaw.com
bosman@marion.quitamlaw.com

Attorneys for Defendant Dennis Thacker

Dennis Thacker

[signature: Dennis Thacker]

Date: 2-16-10

State of Illinois )
)
County (and/or City) of Lawrence )

On this 16th day of February, 2010, before me personally appeared Dennis Thacker to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the City and State aforesaid, the day and year first above written.

[signature: Karen L Ulrich]
Notary Public

My Commission Expires: 2-23-10

OFFICIAL SEAL
KAREN L. ULRICH
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 02-23-2010

Monsanto Company and Monsanto Technology LLC

Signature: [signature]

Name: Christopher T. Reat

Title: Stewardship IP Lead

Date: 2/25/2010



SLC-3460166-1

# 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

Form Number
900167093

PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

Grower's Full Legal Name (First/Middle/Last) Dr. Mr. Mrs. Ms. Suffix (Sr, Jr, II, III)

Farm Business Name

Grower's Mailing Address

Farm Physical Address (as listed with the FSA)

Grower's City State Zip

Farm City State Zip

Area Code Business Phone Fax

Last Four of Social Security # Role Operator Owner/Operator Farm Manager Other

Email

## SEED SUPPLIER

Business Name

Area Code Phone

City State Zip

THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: Batch #: Date:

**This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.**

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple® corn, YieldGard VT Rootworm/RR2® corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax™ corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Bollgard II® with Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® Sugarbeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

1. **GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

2. **BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

3. **FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

   THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

4. **GROWER AGREES:**
   - To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
   - Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa seed or crop, including hay and hay products, only to those countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
   - To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
   - To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
   - To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
   - Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
   - Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
   - To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
   - Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.
   - To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
   - To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
   - To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed.
   - To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
   - To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
   - To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
   - To allow Monsanto to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

*(The Agreement continues on the reverse side of this page.)*

**GROWER SIGNATURE AND DATE REQUIRED**

Name Date

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

PENGAD-Bayonne, N.J. EXHIBIT A

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**

- A limited use license to purchase and plant Seed and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready or Genuity™ Roundup Ready crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable U.S. patents listed below (other than the Dow AgroScience Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses the Grower under its applicable U.S. patents listed below (the "Dow AgroScience Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 59122-7 to the extent either is present in any SmartStax Seed being obtained by Grower pursuant to this Agreement, Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready Corn 2 corn in Grower's crops for the 2010 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**6. GROWER UNDERSTANDS:**

- Monsanto Company is a member of Excellence Through Stewardship™ (ETS). These products containing Monsanto technologies have been commercialized in compliance with the ETS Product Launch Stewardship Guidance and the Monsanto Product Launch Stewardship policy, after meeting applicable regulatory requirements in key export markets with functioning regulatory systems. Any crop or material produced from these products may only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Growers should talk to their grain handler or product purchaser to confirm their buying position for these products. Excellence Through Stewardship™ is a service mark of Biotechnology Industry Organization.
- Insect Resistance Management: When planting any YieldGard, Bollgard, Genuity™ Bollgard II products, Grower must implement an IRM program according to the size and distance guidelines specified in the TUG and the IRM/Grower Guide, including any supplemental amendments. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- Crop Stewardship & Specialty Crops: Refer to the section on Coexistence and Identity Preservation in the TUG for applicable information on crop stewardship and considerations for production of identity preserved crops.
- Corn Trait Performance: All hybrids containing Monsanto corn traits (YieldGard Corn Borer corn, YieldGard Rootworm corn, YieldGard Plus corn, and Roundup Ready Corn 2 corn) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard Rootworm corn and YieldGard Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

**7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:**

Grower may not purchase Bollgard cotton seed or Bollgard with Roundup Ready cotton seed after September 30, 2009. Monsanto has petitioned the U.S. Environmental Protection Agency (EPA) to amend its registration to allow Monsanto to distribute any of this seed purchased by a Grower before September 30, 2009 in the spring of 2010 for planting during the 2010 growing season. Monsanto will publicly announce the EPA's decision when it is received. Whether the petition is granted or not, Grower must return any unplanted Bollgard cotton seed no later than the end of the 2010 planting season. These restrictions do not apply to any Genuity™ Bollgard II cotton seed products.

**8. GENERAL TERMS:**

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide"). To obtain additional copies of the TUG and/or the IRM/Grower Guide, contact Monsanto at 1-800-768-6387 or go to www.monsanto.com. Once effective, this Agreement will remain in effect until either the Grower or Monsanto choose to terminate the Agreement, as provided in Section 9 below. Information regarding new and existing Monsanto Technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.

**9. TERMINATION:**

Grower or Monsanto may choose to terminate this Agreement effective immediately by delivering written notice to either party. Grower must deliver the notice of termination to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. If this Agreement is terminated pursuant to such a notice, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased by the Grower.

In the event Grower violates the terms of this Agreement, then this Agreement shall automatically terminate. However, Grower's responsibilities and the other terms herein shall survive as to all Seed purchased or used by the Grower prior to such violation (such as but not limited to Grower's obligation to use Seed for a single commercial crop, Grower's obligation to pay Monsanto for its attorneys' fees, costs and other expenses incurred in enforcing its rights under this Agreement, and Grower's agreement to the choice of law and forum selection provisions contained herein). Further, Grower shall not be entitled to obtain a future limited use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the prior breach and prior termination of the limited use license and expressly granting and/or reissuing the limited-use license previously obtained (and terminated) pursuant to this Agreement. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow Agrosciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs and other expenses incurred in enforcing rights under this Agreement including, but not limited to, expenses incurred in the investigation of the breach of this Agreement and/or infringement of one or more of the U.S. patents listed below.

**Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.**

**10. NOTICE REQUIREMENT:**

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**12. GROWER'S EXCLUSIVE LIMITED REMEDY:**

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-768-6387.

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**14. UNITED STATES PATENTS:**

The licensed U.S. patents include: for Bollgard cotton – 5,322,938; 5,352,605; 5,530,196; 6,943,282; for Genuity™ Bollgard II cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,943,282; 7,064,249; 7,223,907; for Genuity™ Bollgard II with Roundup Ready cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,378,619; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,753,463; 6,943,282; 7,064,249; 7,223,907; RE39247; for Genuity™ Bollgard II with Roundup Ready Flex Cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,064,249; 7,112,725; 7,141,722; 7,223,907; 7,381,861; RE39247; for Bollgard with Roundup Ready cotton – 5,322,938; 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; 6,943,282; RE39247; for Bollgard with Roundup Ready Flex Cotton – 5,322,938; 5,352,605; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Mavera high value corn with lysine – 7,157,281; for Genuity™ Roundup Ready 2 Yield Soybeans – 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,660,911; 6,949,696; 7,141,722; RE39247; for Roundup Ready Alfalfa – 5,362,865; 5,378,619; 5,659,122; 5,717,084; 5,728,925; 6,051,753; RE39247; for Genuity™ Roundup Ready Canola – 5,378,619; 5,463,175; 5,717,084; 5,728,925; 5,750,871; 6,051,753; 6,083,878; RE38825; RE39247; for Roundup Ready Corn – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,040,497; 6,083,878; for Roundup Ready Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,825,400; RE39247; for Roundup Ready Cotton – 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; RE39247; for Genuity™ Roundup Ready Flex Cotton – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Roundup Ready Soybeans – 5,352,605; 5,530,196; 5,717,084; 5,728,925; RE39247; for Genuity™ Roundup Ready Sugarbeets – 5,322,938; 5,352,605; 5,378,619; 5,463,175; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; RE38825; RE39247; for YieldGard Corn Borer corn – 5,352,605; 5,424,412; 5,484,956; 5,591,874; 5,859,347; 6,180,774; for YieldGard Corn Borer with Roundup Ready Corn – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; RE39247; for YieldGard Corn Borer with Roundup Ready Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; 6,825,400; RE39247; for YieldGard Corn Rootworm corn – 5,352,605; 5,484,956; 6,063,597; 6,501,009; 7,227,056; for YieldGard Plus corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,859,347; 6,063,597; 6,180,774; 6,501,009; 7,227,056; for YieldGard Plus with Roundup Ready Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard Rootworm with Roundup Ready Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard VT PRO – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 6,051,753; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,250,501; for YieldGard VT PRO/RR2 – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,051,753; 6,083,878; 6,489,542; 6,825,400; 6,962,705; 7,064,249; 7,250,501; RE39247; for YieldGard VT Rootworm/RR2 – 5,322,938; 5,352,605; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,063,597; 6,083,878; 6,825,400; 7,227,056; RE39247; for YieldGard VT Triple – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 7,227,056; RE39247; for Genuity™ VT Triple PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,227,056; 7,250,501; RE39247; for tank mix - 6,239,072 ; for Genuity™ SmartStax™ – 5,276,268; 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,112,665; 7,227,056; 7,250,501; RE39247;

Dow AgroScience Patent Rights for Genuity™ SmartStax™ – 6,573,240; 6,737,273; 6,218,188; 5,510,474; 6,020,190; 6,127,180; 6,548,291; 6,624,145; 6,340,593; 6,893,872; 6,083,499; 6,900,371; 6,943,282; 7,288,643; 7,323,556; 7,514,544; 7,417,132; 7,435,807; 7,449,564.

Roundup Ready® Alfalfa seed is currently not for sale or distribution. The movement and use of Roundup Ready® Alfalfa forage is subject to a USDA Administrative Order available at http://www.aphis.usda.gov/brs/pdf/RRA_AO_final.pdf. Cottonseed containing Monsanto traits may not be exported for the purpose of planting without a license from Monsanto. B.t. products [illegible]

Growers may utilize the natural refuge option for varieties containing the Genuity™ Bollgard II® trait in the following states: [illegible]

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Genuity™ SmartStax™ [illegible]

IMPORTANT: Grain Marketing and Seed Availability: Genuity™ VT Triple PRO™ [illegible]

**EXHIBIT B-1**

## RECORDS RELEASE AUTHORIZATION

The undersigned hereby instructs and authorizes the Custodian of Records of:

(a) all agricultural input suppliers, including but not limited to, chemical and seed distributors/retailers, seed cleaners, retail outlets and contractors; and

(b) all purchasers of commodities, crops and grain;

to provide a full and complete copy of any records maintained by said custodian that pertain in any way to the undersigned, or any entity or enterprise owned, managed or controlled by the undersigned, to Monsanto, or the law firm of Husch Blackwell Sanders, LLP, or their authorized agents. The undersigned understands and agrees that a photocopy or facsimile copy of this Records Release Authorization can be used to obtain the referenced records, in lieu of the original Records Release Authorization. This authorization will remain effective through December 31, 2016.

_____________________________ _______________

Dennis Thacker Date

**EXHIBIT B-2**

**CONSENT TO INSPECT AND RELEASE DOCUMENTS**
(Privacy Act Request)

**Requester:** Dennis Thacker

**D/B/A; farm entity:** ______________________

**Requester's Current Addresses:** ______________________________

______________________________________________________________________

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. § 1001 by a fine of not more than $10,000.00 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. § 552a(i)(3) by a fine of not more than $5,000.00.

______________________________________________________________________

I request that the following records for the years 2009 through 2016, inclusive, be released:

1. All FSA records (including FSA 578, 1026A, the USDA Detailed Acreage History Report and aerial maps) and all records from the Risk Management Agency of the USDA relating to the above-named requesters or any entity by or through which they may farm or be shown as an owner or operator by the FSA office;

Pursuant to 5 U.S.C. § 552a(b), I further request, authorize and direct the U.S. Dept. of Agriculture to release any and all information relating to me, including the foregoing records, to the following: (a) Monsanto, or their duly authorized representatives, or (b) Husch Blackwell Sanders, LLP and/or their representatives.

I am voluntarily signing this consent, without promises being made to me nor under threat of duress or coercion.

NAME: Dennis Thacker

BY/TITLE: ______________________________
(Signatures of Grower/Requester)

DATE AND TIME: ________________________